Frank, I'm not sure I pronounced that correctly. Kaua. I am Kaua. Kaua. Good morning, Judges Trott, Paez and Nelson. My name is Peter Carlisle. I'm the prosecuting attorney for the sitting county of Honolulu. Deference to a state court decision should mean, if it's a close case, the state court decision stands. If there's a split of authority, the state's court decision should stand, if reasonable minds can differ. If it's flat wrong, it falls. If it's flat wrong, it's got to be an unreasonable application. It can be merely erroneous. It can be wrong, but it can't be an unreasonable application, which means that there can be no basis in reason for the application that the state court made. That's how I read the anti-terrorism and effective death penalty statute. When I first read this case, I thought, maybe you slip in under the wire, because it's possible to see this as, once the priors are established, then the only question becomes, what do you do once the priors are established, and it extends the period during which a person can be incarcerated. But I read your own State's law, and they tell me that's not the way it works, that both of the elements have to be established in order to get this extension. If that's the case, then the entire thing has to go, maybe, in a bifurcated hearing to a jury. If that's the ultimate decision, then, yes, it would have to go to bifurcated hearing at every chance that we get when we file an extended term. Let me suggest to you that if you take a look at the way that the State court decisions evolved, beginning with Huelsman, you'll realize that that interpretation is not correct, because it's from the very beginning said that it's a two-step process. The first step has to be proven beyond a reasonable doubt. The second step being what? Meaning, basically, that he's a two-time offender. Right. I've got two felony offenses, which is within the decision made by the jury. Okay. Okay. The second step is for the protection of the public, which, from the very get-go, when it was interpreted by the Hawaii State Supreme Court, they said that goes to the question of discretion. And that, if you take a look at Huelsman, at the very early parts of it, you'll realize that that's exactly what it does. From the very beginning, the Hawaii State Supreme Court has been dealing with statute in 1972, the extended term. Huelsman was where we began. But what do we do in the Hawaii Supreme Court seems to have made it clear in Schroeder that both findings have to be established in order to impose the extended sentence. The answer is, one of them guides the discretion that the judge must use. And if you take a look at Schroeder, and you also take a look at, I believe it is Okamura, you'll realize that the Supreme Court has interpreted the necessity of that finding to mean exclusively this. You're going to exercise your discretion, and we want to be able to review it. All that determination for the reason for the protection of the public is therefore is so that the Hawaii Supreme Court will have a record with factual findings and conclusions that it can review under an abuse-of-discretion standard. So if you take a look at that, you'll realize that that's not what an apprendee-type element is. So what you're saying is that the first under the first step, once they have established the existence of the two priors, qualifying priors, that that means that he's eligible for the extended sentence. Absolutely. And that within that range, the added range, the judge exercises discretion. That's correct. So what I do is I read essentially the extended-term sentencing statute, along with our ordinary sentencing statute, as sentencing statutes. So the range, once you're being sentenced for two or more felonies, they're not even prior felonies. They could be done contemporaneously. Once you're being basically put for two or more felonies, and the indictment and the jury verdict returns that, then you are basically subject to not only ordinary sentencing, which would be Class A or murder sentencing, you are also put on notice that you are going to be looking at the potential of an extended term. Which is the case. When does the extended term get charged, for lack of a better term? The answer is, is that for the underlying purposes, for those parts that are what our Supreme Court calls intrinsic, that gets done in the charging document. But that – but there, you're simply charged with felonies A through X. Correct. And that's two or more felonies. Right. But not the extended sentence is not charged in the introduction. We don't say that that's necessarily an extended sentence, nor do we say if it's an ordinary sentencing, do we put that down. If it's a robbery, everybody knows that that's a Class A because of the sentencing statutes that we have. It actually gets – you know that it's going to be filed and pursued by the prosecution after we file a motion for an extended term. That's after the jury has returned its verdict, and we know that all the predicate bases that have to be proven beyond a reasonable doubt have been proven beyond a reasonable doubt. So let's say we charge a robbery. It seems to me that maybe the case isn't as complicated as sometimes we get – we wallow around in all this terminology. But if we look at the statute, 706-659, a person who has been convicted of a Class A felony shall be sentenced to an indeterminate term of imprisonment of 20 years without the possibility of suspension of sentence or probation. Now, he was charged with a couple of Class A felonies. Correct. And so he would know that, well, that's a 20-year term. Correct. Then a friend of his comes along and says, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Correct. Why just reading those together don't you figure that you can't go beyond this statute for 20 years without presenting something to the jury? Because you have to read it along with the rest of the sentencing statutes. And the Hawaii sentencing statutes include in its sentencing provisions sentence of enhancement for an extended term of imprisonment. Therefore, you read the Class A and you have two Class As, as you suggested. If you get convicted by one and only one by the jury, then you only have the Class A without the enhancement decided by the jury if you decide both. Or if you plead to both, you know that now an enhanced sentence will have to be applied. And because we put those in the, because that's essentially in the indictment, the two contemporaneous convictions, if there is a change of plea, the defendant will have to be informed. Not only could you get the 20 years, but you could also get the enhanced provision as well. So the defendant will know and will always have been on notice as long as there are two felonies that he will be subject to that first prong of the extended term sentencing and that is the proof beyond a reasonable doubt that there's two or more felonies that he's currently being sentenced for. But that isn't enough. That's correct. And it would never be enough unless the judge had substantial discretionary reasons to impose it. But why discretion? Why aren't those facts that increase the term beyond the statutory maximum? In other words, the judge has to go further than just reach out to this ephemeral State sentencing scheme that exists out there and say, yeah, well, he was always subject to an extended term. The judge still has to do some very specific things. This is what the judge has to consider at sentencing. And then the judge has to make a discretionary call as to whether or not there's going to be the extended term or ordinary sentencing. He has to look at the defendant's past, what he's done, what his character was, and what his bad acts were, including convictions. All of those things that we do not normally give to a jury, that's what he has to look at. At the current case, he has to look at the facts and circumstances of it. What did he do? Who did he do it to? How did he do it? Those things. And then he must also make a decision, he or she must make a decision as to what goes on in the future. In other words, is this somebody who we think is going to be a recidivist? The question that I've sort of got pounding around in my head is when you're talking about the apprendi prior conviction, are you really talking just about convictions because they also use the word recidivism throughout some of their United States Supreme Court decisions? Is recidivism identical to a prior conviction, or does it include all of those things that we allow a judge to determine in terms of their discretion? Do we allow them to use the guy's character, his past history? If you take a look at the sentencing of Cowa, specifically at those portions that exist, I believe, on pages 17 and 8 to 17, something like that, you're going to take a look at all of the things that were talked about in terms of this guy's past history. None of those things, let me suggest to you, could adequately be explained in any charging document. Many of those things, the prosecutor will, as a pragmatic matter, not know at the time that he's charging the case. If you require that to be something that is elemental and has to be charged in the charging document, the prosecutor, before he could in good faith pursue an indictment for a multiple offender, would have to have known all of those factors beforehand. And that makes it pragmatically almost impossible to do. If I'm going to continue to be simplistic and try to get to the basis of what is going on here, what you're saying to me, then, is you prescribe the statutory maximum within the words of apprendi, that's what the Supreme Court said. In your mind, includes the extended term because it's a part of the state statute at the time he's charged with the basic crime. Yes, with the added twist of the way that our state Supreme Court interprets our law is that they will limit that to those facts which they consider to be intrinsic to the crime. So almost everything that you've got, that we've got in your recent decisions from the Supreme Court, including the hate crime statute that apprendi was the basis of, that would be decided by the Hawaii Supreme Court as being intrinsic because it was part of an intent that occurred during the commission of the crime. Now, this becomes, once again, I think the reason that we have problems with the apprendi decision is largely because what fits into that category and what fits into the recidivism category, and that's not easily – it should be nicely black and white, and it's simply not. But doesn't your argument transfer itself back to where apprendi was if we substitute sentencing factor for extrinsic? No, because we actually have a sentencing factor that's detailed as a sentencing factor that our Supreme Court has decided because it's intrinsic to the crime, it has to go into the indictment. So the label sentencing factor doesn't really solve the problem. It would be nice if I could say that, but it doesn't, because we have something that calls a cruel and heinous crime. Our Supreme Court has said in one of its decisions that that has to be put in the indictment and it has to go to the jury. So they've been dealing with these problems really for now for almost a third of a century. And as a result of it, they look at it, and it's not like they don't listen to federal law. For example, if you take a look at FOIA, they very specifically looked at it and they sat there and said, okay, wait a minute. We've now got Almendez-Torres and Jones to contend with and we're going to look at that and we're going to look at our seminal case, Hulsman, and see whether or not we've done something right. And they said, you know what, we've done something wrong. We were allowing the judge to make findings of fact that were elemental. Therefore, we're not going to allow that to go on any law in the state of Hawaii. That was wrong. We apologize, and from here on out, we're going to do it right. And the way that they do it right was by enunciating that test that they had, just looking basically where do the things come from. Do they come from the rising out of the state, basically the crime itself, or are they more historic facts? And so that's the analysis that they've been going through. Is your argument that you make in your blue brief the same argument or explanation that the Hawaii Supreme Court gave for upholding the sentencing scheme? To a large extent, yes. And to a large extent, it isn't? No, to a small extent it isn't, and only because- What's the small extent to which- I'm not sure because I haven't matched my argument to that word for word. Some of my stuff comes while I'm standing here talking to you. Because according to the Ninth Circuit law, we're stuck with the rationale given to us by the Hawaii Supreme Court. We can't find other reasons why it might be all right. I would suggest to you that the rationale that I'm giving to you is wholly consistent with the decisions of the Hawaii Supreme Court in State v. Calif. Would you like to save the rest of your time? I'd like to save the rest of my time. Thank you. Good morning. May it please the Court. Peter Wolfe on behalf of Mr. Kawa. The key aspect of the Apprendi decision that appears to have been overlooked by the Hawaii Supreme Court is that Apprendi deals with the form, excuse me, the effect of a finding when made and not the form of the finding. And so the inquiry of the Hawaii Supreme Court, which they continue to maintain as being useful as to whether or not a fact is extrinsic or intrinsic, is completely useless when determining whether or not something is in compliance with Apprendi or not in compliance with Apprendi. Because the teaching of Apprendi is simply this. It is the effect of the fact when found which tells you whether the fact is an element within the meaning of element, within the meaning of the Sixth Amendment. So you could have, definitionally, I suppose, a question of what is an element under Hawaii state law, under traditional elements analysis, but the Apprendi question is something different, which is what is the effect of the fact when found? And if the effect of the fact when found is to increase the maximum penalty, then it is an element. And although it's true that many of us, and indeed, perhaps many of the courts of the country, didn't think the Supreme Court was all that serious about Apprendi when it was first decided, and apparently the Hawaii Supreme Court still thinks that, we now have enough post-Apprendi law to recognize the fact they were dead serious about their analysis. And so the question to be asked, in this case, is, could the extended term sentence have been imposed on Mr. Kawa without the second step finding, that is to say, without a finding that it is necessary for the protection of the public? And the short answer to that question is no. And there's nothing other than that being a finding of fact. And I think the prosecutor's argument, in effect, admits it here. Because it is true that, in part, what the sentencing judge has to do is make a prospective finding, namely in Kawa's case, where he was charged, by the way, with offenses that carried a life sentence. He wasn't convicted of those. He was convicted of Class A, Class B, and Class C felonies. And so, in respect to Class A felonies, the sentencing judge had to make this inquiry. 20 years from now, when Kawa would be due to get out, if he was sentenced to the ordinary term that the law provides, is it necessary for the protection of the public that he be still subject to a longer sentence, namely a life sentence, namely the extended term sentence that's authorized by Hawaii law for Class A felonies? And the trial judge's answer to that question was yes. But he couldn't answer that question yes without making fact findings. And so, you have the development of Hawaii law, which predates Apprendi, and then you have the development of Hawaii law, which postdates Apprendi. And the problem is, is they haven't changed their analysis, even though the legal landscape has changed. Once the priors are established, does that increase the range of possibility that a person will spend time in prison? It does not, unless the step two finding is made. How do we, how do we know that that's the case? I mean, they, they keep telling us, no, that really, that's what extends it. And then, traditionally, the judge then figures out. What error in that range do you sentence a person to? That's what Learned Counsel is telling you. That's not what the Hawaii Supreme Court is telling you. The Hawaii Supreme Court has analyzed this case as falling within their understanding of Apprendi. And the problem is that their understanding of Apprendi is that Apprendi only dealt with elemental facts that are extr, that are intrinsic to the offense charge. And that, and their understanding of Apprendi is that only those elemental facts that are intrinsic need to be charged and proved beyond a reasonable doubt to the jury. And those that are extrinsic may continue to be proved and decided by the judge. What was charged in this case? In this case, the offenses charged, or the offenses of conviction, the offenses charged are not the same as the offenses of conviction. So the offenses of conviction were. Charged with respect to the possibility of an extended term. Nothing in the indictment. Nothing. Nothing. There's no notice or anything in there that says, and an extended term flows from a finding of whatever it is. No, what the Hawaii procedure is, and what the procedure that was followed in this case, was that post the verdict, the prosecutor filed a motion for extended term in which the prosecutor alleged that Mr. Cowell was a multiple offender, which was not a point that was contested, and in which they alleged various facts that they suggested justified the step two necessary for the protection of public finding. And then the trial court held a hearing and made findings of fact, both orally and then later a somewhat different version was reduced to writing. And on that basis, granted the motion for the extended term and therefore extended the class C felonies from 5 to 10 years, the class B's from 10 to 20, and the class A's from 20 years to life. But the Hawaii court has always adhered to its analysis before Apprendi and after Apprendi that you have to do the two findings, the two step process. And what they have said, and I think the clearest case that makes it manifest that you can't get an extended term without a fact finding on step two is Okamura. Because in Okamura, the judge, this was a pre-Apprendi case, but in Okamura what happened was the trial judge extended, granted the extended term and it was up on appeal in front of the Hawaii Supreme Court, and they vacated the extended term and remanded it for findings of fact to justify the extended term. So nothing could be plainer than that findings of fact are required in order for there to be a step two finding that the extended term is necessary for the protection of the public. And as I think Your Honor, Judge Trott pointed out, in reviewing this matter on habeas, the key is what was the rationale of the Hawaii Supreme Court, not what other rationale might there be which could justify this outcome. And so that's why we say that not only are we, we're on two prongs of the ADPA here. The second prong, and perhaps the one slightly weaker, is the unreasonable application. But the first prong of review here, which is that the decision of the Hawaii Supreme Court is contrary to clearly established federal laws articulated by the United States Supreme Court, is it seems to me the strongest that I've ever seen. And, and Apprendi is a bright line rule. And so under Apprendi, the question is, what is the effect of the fact when found? And it doesn't matter that the effect of the fact when found, doesn't matter whether then that increases the judge's discretion to give a longer sentence or that it's mandatory that the judge give a longer sentence when the fact is found. The question is, could the judge have given the extended sentence or the longer sentence without finding the fact? And if the answer to that question is yes, you can get the longer sentence without the finding of fact, then it's not a Sixth Amendment element within the meaning of Apprendi. But if the question is, no, you could not get the longer sentence without the finding of fact, then it is a Sixth Amendment element under Apprendi. And here... It strikes me that Ring is somewhat instructive, just because you're death eligible from what the jury finds doesn't then allow a judge to go ahead and give you death. I couldn't agree more, Your Honor. And in fact, the failure of the Hawaii court to discuss Ring, other than to dismiss it in a footnote, I think is instructive as to what they think Apprendi means. And so I come back to, I think, what is the fundamental problem with the Hawaii Supreme Court's view of this matter, which is they have a view of Apprendi that is not the United States Supreme Court's view of Apprendi. And I think, or I would suggest at least, that they think theirs is a better rule. They think it's a fairer rule. It's better for the defendants in the long run if these matters aren't presented to juries or tried in front of juries. You have a bifurcation is the way you handle problems. Well, that's right. And that would solve the fairness and due process question. But the Sixth Amendment does not concern itself with the fairness or due process aspect of it. It's concerned, in Apprendi, with the right to a jury trial. And that is the right that was provided. The Second Circuit, in a case called Brown v. Greener, addressed New York State's sentences. And it's a very different scheme, which is similar. It's not identical, but. Well, and it's far less similar than the other. I'm just wondering how you would respond to that case. Yes. How I respond to the Brown case is simply this. It's now clear, based on the Second Circuit's decision, that in New York, you are subject to the extended term without any secondary Step 2 fact-finding. The maximum is increased. That's right. The maximum is increased once you're convicted of the two felonies. And nothing else is necessary for the State trial court, then, to exercise its discretion as to whether it's in the best interest of the people that you got a sentence twice as long. A small difference, but big in constitutional terms. Yeah, exactly. Huge in constitutional terms. I guess that's pretty much all I have, unless the Court has any questions. Thank you. Since you've been pointed very specifically by my learned colleague, Mr. Wolt, to the Okamura decision, I would ask, and on mine, it's very close to the end of the decision. This is what that provision, necessary for the protection of the public, in a Hawaii statute means to the Hawaii State Supreme Court, which is the ultimate arbiter of what the meanings of our statutes are. And they say, in order to engage in meaningful review of a sentencing court's decision without involving ourselves unduly in the exercise of the court's discretion, we require the sentencing court to state on the records its reasons for determining the commitment of the defendant for an extended term as necessary for the protection of the public, and enter into the record all findings of fact which are necessary to the decision. They ask for those findings, those facts, simply for the purposes of appellate review. That's what they say it's there for. Well, they say all findings of fact. They say, in order to engage in a meaningful review of a court's decision without unduly getting ourselves into the middle of their discretionary abilities, the purpose that the ---- They assume there have to be findings of fact. They're telling you no. Actually, that was by decision. That's what they did in Huelsman. They said that there have to be findings of fact. And the reason that they asked for that was specifically so that they could get review. Maybe that's ñ I think it may have been ñ no, I think it was Huelsman. I'd have to get the right ñ there's a decision that justifies that. But basically, the findings of fact are a requirement by the Hawaii State Supreme Court. That's not written into the statute. They're asked ñ they said that they wanted that so that we can review your discretion. How do you deal with the ring analogy? The ring analogy, what I take a look at as ring is that's one of the death penalty cases. And if you take a look at that, you will see very quickly that ultimately that's the type of thing that both sides of Apprendi, both the dissent and the majority talked about there being sort of a different set of rules for death penalty cases. Death is different. Death is different is sort of what they're saying on both sides of the fence on that. However, I'm under the opinion that if it was something that our Supreme Court looked at and said, hey, this is intrinsic to the case, then ultimately it would have been decided that it would have had to have gone to the jury. If there's nothing further, thank you for letting me visit you. Thank you. The matter will be submitted.
judges: Trott, T.G. Nelson, Paez